# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| STEVEN CONLEY,<br>c/o Malik Law<br>8437 Mayfield Road, Suite #101<br>Chesterland, OH  45202 | ) <br> ) CASE NO.: <br> ) <br> ) <br> ) JUDGE: <br> ) <br> ) |
| Plaintiff, | ) **COMPLAINT AND JURY DEMAND** <br> ) |
| v. | ) <br> ) |
| LORAIN COUNTY, OHIO AND<br>LORAIN COUNTY BOARD OF<br>COMMISSIONERS<br>226 Middle Avenue, Fourth Floor<br>Elyria, OH 44035, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| and | ) <br> ) |
| SHERIFF PHIL R. STAMMITTI<br>LORAIN COUNTY SHERIFF'S OFFICE<br>9896 Murray Ridge Road<br>Elyria, Ohio 44035 | ) <br> ) <br> ) <br> ) <br> ) |
| In his official capacity as Lorain County<br>Sheriff, | ) <br> ) <br> ) |
| and | ) <br> ) |
| LIEUTENANT JAMES GORDON<br>LORAIN COUNTY SHERIFF'S OFFICE<br>9896 Murray Ridge Road<br>Elyria, Ohio 44035 | ) <br> ) <br> ) <br> ) <br> ) |
| Individually and in his official capacity as<br>Lorain County Sheriff's Office Lieutenant, | ) <br> ) <br> ) |
| and | ) <br> ) |
| CORPORAL JAMES MARTIN<br>LORAIN COUNTY SHERIFF'S OFFICE | ) <br> ) |

1

| | |
|---|---|
| **9896 Murray Ridge Road** | ) |
| **Elyria, Ohio 44035** | ) |
| | ) |
| **Individually and in his official capacity as** | ) |
| **Lorain County Sheriff's Office Corporal,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **OFFICER RUBIN ORTIZ** | ) |
| **OFFICER JASON BRUNNER** | ) |
| **OFFICER JAMES STANLEY** | ) |
| **OFFICER ERIC HOLLIS** | ) |
| **LORAIN COUNTY SHERIFF'S OFFICE** | ) |
| **9896 Murray Ridge Road** | ) |
| **Elyria, Ohio 44035** | ) |
| | ) |
| **Individually and in their official capacities** | ) |
| **as Lorain County Sheriff's Office Officers** | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## I. INTRODUCTION

1. This civil rights case challenges the Defendants' use of excessive force used upon a restrained, compliant, and mentally ill inmate at the Lorain County Jail (the "Jail"). This civil rights case seeks redress for the violation of Plaintiff Steven Conley's Fourth and Fourteenth Amendment constitutional rights. This case also seeks redress for the state law claims of assault and battery. This Complaint also alleges and demonstrates that Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitt, and Lieutenant James Gordon ratified Defendant Officers' conduct through their failure to meaningfully investigate Mr. Conley's assault. These Defendants also failed to train their Officers, despite the obvious need to train officers to prevent the use of excessive force. The policies, procedures, customs and habits of Officers in the Lorain County Jail are a moving force behind the constitutional violation suffered by Mr.

2

Conley. Lastly, this case seeks redress for claims of spoliation for the destruction of video footage of the attack on Mr. Conley as well as other evidence.

2. The violation of Mr. Conley's state and federal rights occurred on January 30, 2018 in the Lorain County Jail. On that day, Defendants Corporal James Martin, Corrections Officers Ruben Ortiz, Jason Brunner, Jim Stanley, and Eric Hollis (hereinafter Defendant Officers) used excessive, gratuitous and unreasonable force while on duty in the Jail when they physically assaulted Mr. Conley without justification. There was no legitimate or legal justification for these Defendant Officers to abuse, assault and injure Mr. Conley. Mr. Conley was unarmed, compliant, and hand cuffed. Mr. Conley did not pose a threat at the time the excessive, gratuitous and unreasonable force was employed. Mr. Conley brings this civil rights action to secure fair compensation and to encourage Lorain County Sheriff's officers to refrain from the unnecessary, illegal, gratuitous, unreasonable, and excessive use of force against inmates in the future.

3. Defendants Ortiz, Brunner, Stanley, and Hollis, despite being required to do so, had knowledge of the excessive use of force, yet deliberately failed to report the illegal gratuitous and unconstitutional use of force employed upon Mr. Conley.

4. Defendants Ortiz's, Brunner's, Stanley's, and Hollis's, illegal and unconstitutional conduct was known, approved and ratified by Defendant Corporal Martin as well as Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin who all failed to conduct a meaningful and adequate investigation into the Defendant officers' illegal use of force.

5. Plaintiff believes that video footage has been erased, destroyed, and withheld along with

other evidence.

## II. JURISDICTION

6. Jurisdiction over claims brought under the Civil Rights Act of 1871 is conferred on this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4). Jurisdiction over the state law claims is conferred by 28 U.S.C. §1367. An affidavit pursuant to Ohio Rule Civ. Proc. 10(D) (2) is attached in support of the medical claims. Venue is proper in this Division.

## III. PARTIES

7. Plaintiff Steven Conley was a resident of Lorain County, Ohio during all times relevant to this action. He brings this action on his own behalf for damages resulting from the violation of rights secured by the United States Constitution.

8. Defendant Lorain County, Ohio is a unit of local government organized under the laws of the State of Ohio. The County is sued through the Lorain County Board of Commissioners who are named only in their official capacity pursuant to O.R.C. § 305.12. Defendant Lorain County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. Lorain County was at all times relevant a county policy maker with respect to customs, practices, policies and procedures in the Lorain County Jail.

9. Defendant Sheriff Phil R. Stammitti is currently and was at all times relevant to this action the duly elected Sheriff of Lorain County, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his official capacity. He was at all times relevant a county policy maker with respect to customs, practices, policies and procedures in the Stark County Jail.

10. Defendant Lieutenant James Gordon is currently and was at all times relevant to this

4

action a Lieutenant for the Lorain County Sheriff's Office. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued individually and in his official capacity. He was at all times relevant a county policy maker with respect to customs, practices, policies and procedures in the Stark County Jail.

11. Defendant Corporal James Martin is a person who at all times relevant to this action served as a Corporal of the Lorain County Sheriff's Department in the Lorain County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

12. Defendant Officer Ruben Ortiz is a person who at all times relevant to this action served as a Corrections Officer of the Lorain County Sheriff's Department in the Lorain County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

13. Defendant Officer Jason Brunner is a person who at all times relevant to this action served as a Corrections Officer of the Lorain County Sheriff's Department in the Lorain County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

14. Defendant Officer Jim Stanley is a person who at all times relevant to this action served as a Corrections Officer of the Lorain County Sheriff's Department in the Lorain County Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

15. Defendant Officer Eric Hollis is a person who at all times relevant to this action served as a Corrections Officer of the Lorain County Sheriff's Department in the Lorain County

Jail. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued in his individual and official capacity.

## IV. FACTS

**A. Steven Conley Entered the Lorain County Jail on December 22, 2017**

16. On December 22, 2017, Steven Conley was booked into the Lorain County Jail and a Mental Health Questionnaire was conducted by Attending Provider Kim Murphy.

17. The Mental Health Questionnaire listed Mr. Conley's location as "05 SPECIAL NEEDS-SPN FLOOR 05".

18. During the Mental Health Questionnaire, Mr. Conley reported that he had been hospitalized for emotional or nervous problems a few times and had received counseling or outpatient counseling for this.

19. Mr. Conley further reported that he hears voices all the time that argue with each other and the Attending Provider found that Mr. Conley presented as paranoid.

20. Mr. Conley reported that he and his family all have three eyes and he can see this when he closes his eyes.

21. On December 22, 2017, a Mental Health Encounter was conducted by Attending Provider Jennifer Bowen.

22. On this Mental Health Encounter the Narrative states, "Per consult with C.O. Pufnock in booking, the court has scheduled a safety evaluation for this resident. Court has ordered that this evaluation be completed by the resident's next court date of 12-27-17."

23. On December 24, 2017, Mr. Conley was referred to Attending Provider Deborah Koricke, PhD by a nurse due to bizarre actions. During this encounter, Mr. Conley stated that he was exercising and rapping and people are not understanding that.

24. On December 27, 2017, a Lake County Sheriff's Office Chronic Care Exam was performed. During this encounter, Mr. Conley reported that just one month earlier, he was hospitalized at St. John West Shore Mental Health.

25. On December 27, 2017, Mr. Conley was seen again by Dr. Koricke and she determined that Mr. Conley should be kept in a safe cell in SNP and concluded that Mr. Conley should be a high priority for Dr. Ahmed.

26. On December 28, 2017, Stephanie Suter, MSW, LISW-S, met with Mr. Conley to assess his current mental status due to him being housed in SNP. Mr. Conley's outside records indicated that he was on Latuda so it was determined that Mr. Conley would remain in SNP and that Latuda would be started.

27. On January 2, 2018, a preliminary hearing was had in the Elyria Municipal Court. At this hearing, the Judge Ordered Mr. Conley to schedule a psychiatric evaluation no later than five days after posting bond and commence any recommended treatment immediately, including taking prescribed medication.

28. Later that same day, on January 2, 2018, Mr. Conley had an individual counseling session with Suter. The plan was for Mr. Conley to remain in SNP and put on Dr. Ahmed's list for follow up. In addition, mental health was to follow up with Mr. Conley both routinely and as needed.

29. On January 5, 2018, Mr. Conley met with Dr. Koricke and reported that he was doing great on the Latuda. He was calm and his affect was brighter. Dr. Koricke concluded that Mr. Conley should stay in his current cell, but can move to a regular SNP cell if the space was needed.

30. On January 11, 2018, Mr. Conley was seen by Dr. Maboob Ahmed. Dr. Ahmed found Mr. Conley to be pleasant and cooperative and Mr. Conley reported he was doing well.

31. Dr. Ahmed increased Mr. Conley's Latuda and was going to follow up with Mr. Conley in two weeks.

32. On January 17, 2018, Mr. Conley had an individual counseling session with David Bostwick, LISW-S, LICDC where he continued to evidence inappropriate laughter and verbal conversations while alone in his cell.

33. On January 18, 2018, Mr. Conley was seen again by Dr. Ahmed and his Latuda was increased again.

34. On January 21, 2018, Mr. Conley had an individual counseling session with Bostwick where Mr. Conley attributed his self-stimulatory behavior to rapping and his laughter to jokes. It was determined that Mr. Conley's affect was inappropriate to the situation. The plan was to continue Mr. Conley in SNP and have mental health see him routinely.

35. On January 28, 2018, Mr. Conley was transported to attend his grandfather's funeral. Mr. Conley and his grandpa were very close.

36. On January 29, 2018, Mr. Conley was suffering from a mental health crisis. Mr. Conley was evidencing some extremely bizarre behavior in his pod. He attributed his behavior to exercising demons out of his cell. It was determined by Bostwick that Mr. Conley would remain in his cell the remainder of the shift to monitor for adjustment of emotions and conduct. Mental Health was to check on him routinely.

37. Later on January 29, 2018, Dr. Koricke went to visit Mr. Conley in SNP. Per the CO and Bostwick, Mr. Conley was acting up in the morning. Dr. Koricke concluded that Mr. Conley be restricted to his cell until the following morning.

38. On the morning of January 30, 2018, Mr. Conley was secured in his cell and was still in an obvious mental health crisis when Defendant Officers decided, for some reason, to move him.

39. Defendants Officers entered Mr. Conley's cell and advised him to go to the back of the wall and place his hands behind his back. Mr. Conley complied.

40. The remainder of this incident and the assault and attack by Defendant Officers upon Mr. Conley can be seen on the video attached hereto as Exhibit 1). The video is completely contradictory to what is written in the Defendant Officers' reports.

41. The video shows a calm, compliant, handcuffed Mr. Conley walking from one area of the jail to a set of doors.

42. Once inside the set of doors, two of the Defendant Officers believed to be Defendants Ortiz and Stanley, attack Mr. Conley who is still handcuffed.

43. One of these Defendant Officers unnecessarily performs a leg sweep on the handcuffed Mr. Conley and the two Defendant Officers then proceed to kick and punch the handcuffed Mr. Conley, now on the ground.

44. Defendant Officers then forced Mr. Conley into a restraint chair where he remained for hours.

45. Defendant Officers Brunner, Hollis, Ortiz, and Stanley completed false and inaccurate Use of Force Report Forms that are contradictory to the video.

46. Defendant Corporal Martin signed off on each of these reports concluding "minimal response applied".

    **B.    Policy, Custom, and Culpable Conduct**

47. Defendants Lorain County, Ohio and Lorain County Board of Commissioners', Sheriff Phil R. Stammitti's, Lieutenant James Gordon's, and Corporal James's policies, practices, customs, and usages regarding subject control, use of force and the documentation of uses of force were and are a moving force behind the excessive force used on Mr. Conley by Officers in this case.

48. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin customarily allow officers to engage in the use of excessive force without being held accountable or disciplined for their misconduct.

49. In August 2005, Defendant Ortiz was transporting a handcuffed and shackled inmate to the detox holding cell. While being transported, the inmate began saying things that Ortiz did not like. Ortiz then, in violation of his supervising officers' orders, had the inmate placed in the restraint chair.

50. In October 2005, Defendant Officer Ortiz, after feeling disrespected by an inmate's words, threw his radio to the floor and became involved in a physical altercation with the inmate.

51. In March 2010, Defendant Officer Ortiz intentionally performed a knee strike to an inmate's head and then he and another Officer then lied on their reports and stated that the knee strike to the head was unintentional.

52. In April 2013, Defendant Officer Oritz assaulted another handcuffed inmate and then forced the injured inmate into a restraint chair. Not surprisingly, the corporal got written statement from the other officers and all stated that they did not witness Ortiz strike the

inmate. Not surprisingly, Officer Ortiz's Use of Force report was signed off by a corporal and it indicated that Ortiz's force was minimal and necessary.

53. It is a custom of Officers in the Lorain County Jail to use force on inmates when the Officers do not like things the inmates say.

54. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin failed to institute adequate policies, procedures, customs, usages, practices and protocols regarding use of force discipline.

55. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin failed to institute and train Supervisors and officers to hold each other accountable when excessive force is used.

56. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin failed to institute adequate policies, procedures, customs usages, practices and protocols regarding the use of force on compliant handcuffed inmates.

57. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin failed to adequately train officers in the management of mentally ill inmates.

58. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin further failed to institute adequate policies, procedures, customs, usages, practices and protocols for

officers regarding the accuracy of individual officer reports when use of force is used or observed by officers.

59. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin failed to adequately train officers how to write complete, accurate, and truthful reports.

60. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin have not disciplined any of the individual Defendant Officers for their misconduct despite a duty to do so.

61. An investigation into the events involving the attack on Mr. Conley, if any, was so incomplete and inadequate as to constitute a ratification of Defendants Officers' conduct by Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin.

62. The training and supervision provided by Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin to Defendant Officers identified herein was deliberately indifferent to the safety of the inmates in the Lorain County Jail, including inmates such as Mr. Conley.

63. The conduct of Defendants Officers identified above constitutes a pattern and practice and again amounts to a moving force behind the constitutional violations and injuries inflicted upon Steven Conley.

64. This way of doing things is so permanent and well settled in the Lorain County Jail that is constitutes a custom.

65. This custom is the moving force behind the injuries suffered by Mr. Conley.

### C. Harm to Plaintiff

66. As a direct and proximate result of the conduct of Defendant Officers, Mr. Conley suffered permanent physical injury, pain, and emotional and psychological trauma.

## V. CLAIMS

### FIRST CAUSE OF ACTION– § 1983-EXCESSIVE FORCE
### (Defendants Ortiz, Brunner, Stanley, and Hollis)

67. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

68. Defendants Ortiz, Brunner, Stanley, and Hollis have, under color of law, deprived Steven Conley of rights, privileges, and immunities secured to him by the United States Constitution including the right to be free from unreasonable seizures under the Fourth Amendment as applied to the States through the Fourteenth Amendment.

69. As a direct and proximate result of the illegal and unconstitutional force used on Mr. Conley, he suffered permanent multiple traumas, including but not limited to black eyes, bruises, and permanent and severe damage to his left ear drum which requires current and future treatment. Mr. Conley also suffered severe and permanent emotional and psychological injuries directly and proximately caused illegal and unconstitutional force used by Defendant Officers.

70. Mr. Conley incurred medical bills and will incur additional medical bills in the future.

### SECOND CAUSE OF ACTION–ASSAULT AND BATTERY
### (Defendants Ortiz, Brunner, Stanley, and Hollis)

71. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

72. Under Ohio law Defendant Officers' acts of touching against Steven Conley constitute battery.

73. Defendant Officers engaged in an unprivileged, intentional, harmful, offensive touching of Steven Conley.

74. Defendant Officers' battery was a direct and proximate cause of Steven Conley's severe and permanent injuries.

75. As a direct and proximate result of the unprovoked, intentional, harmful, and offensive touching, on Mr. Conley, he suffered permanent multiple traumas, including but not limited to black eyes, bruises, and permanent and severe damage to his left ear drum which requires current and furture treatment. Mr. Conley also suffered severe and permanent emotional and psychological injuries directly and proximately caused by the assault and battery by Defendant Officers.

76. Mr. Conley incurred medical bills and will incur additional medical bills in the future.

### THIRD CAUSE OF ACTION – MONELL
**(Defendants Lorain County, Sheriff Stammitti, Lieutenant Gordon, and Corporal James Martin)**

77. Plaintiff incorporates and restates each of the above paragraphs as if fully rewritten herein.

78. The policies, practices, and customs of Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin regarding excessive force were a moving force behind the illegal and unconstitutional force inflicted upon Mr. Conley.

79. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin customarily

allow their officers to use illegal and unconstitutional force upon citizens without having to follow the law and without being held accountable or disciplined for their misconduct.

80. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin failed to institute adequate policies, procedures, and customs regarding the use of force.

81. Defendants Officers' illegal and unconstitutional conduct was known, approved and ratified by Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin, who then failed to conduct a meaningful and adequate investigation into the Defendant Officers' illegal and unconstitutional force inflicted upon Mr. Conley.

82. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin demonstrate a pattern and practice of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to illegal and unconstitutional force.

83. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin demonstrate a pattern and practice of failing to adequately train, adequately supervise, and failing to investigate and discipline its police officers related to illegal and unconstitutional force on mentally ill inmates.

84. Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin demonstrate a pattern and practice of failing to adequately train, adequately supervise, and failing to

investigate and discipline its police officers related to illegal and unconstitutional force on handcuffed inmates.

85. The inadequate training of Defendant Officers by Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin amounts to deliberate indifference to the rights of inmates in the Lorain County Jail.

86. The illegal and unconstitutional force used upon Mr. Conley demonstrates that the custom and policy of Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin is to allow its Officers to believe and act as if they are above the law and as if they are not bound by the parameters set by the Constitution of the United States.

87. This behavior is so permanent and well settled that it constitutes a custom and policy of Defendants Lorain County, Ohio and Lorain County Board of Commissioners, Sheriff Phil R. Stammitti, Lieutenant James Gordon, and Corporal James Martin in the Lorain County Jail.

**88.** This policy, practice, and custom is the moving force behind the injuries suffered by Mr. Conley.

**FOURTH CAUSE OF ACTION – SPOLIATION**
**(Defendants Lorain County, Sheriff Stammitti, and Lieutenant Gordon)**

89. On March 9, 2018, Plaintiff's counsel sent a Public Records Request to the Lorain County Jail for Steven Conley's records. (Exhibit 2)

90. This initial request stated, "we are deeply concerned that information regarding the case will be lost, altered or destroyed before it reaches the undersigned counsel. You have a duty under Ohio law to preserve these records." (Exhibit 2)

91. On or about March 21, 2018, Plaintiff's counsel received a partial response rom the Lorain County Jail.

92. On May 11, 2018, Plaintiff's counsel sent a follow up Request to the Lorain County Jail. (Exhibit 3)

93. On July 12, 2018, Plaintiff's counsel sent a third request, specifically itemizing, among other things, the videos that were not produced. (Exhibit 4)

94. On August 3, 2018, Plaintiff's counsel sent a letter to Defendant Lieutenant James Gordon specifying our concerns with the video produced of the attack on Mr. Conley. This letter stated, "We understand there may be only one video of the incident. However, we take issue with the fact that whoever provided the video, chose to stop it when they did and therefore, did not provide us with a complete video. We are seeking the complete video of this incident. Please provide the entire video recording of this incident. If we do not receive the complete video, we will have no choice but to pursue a claim against the Lorain County Sheriff's Office for spoliation of evidence." (Exhibit 5)

95. On August 16, 2018, Plaintiff's counsel sent yet another Request again requesting additional videos that had not been produced. (Exhibit 6)

96. On September 25, 2018, Plaintiff's counsel sent a final letter requesting the entire video. This letter advised the Lorain County Jail that we represent Steven Conley. (Exhibit 7)

97. The only response Plaintiff's counsel ever received from Defendant Gordon is a letter dated July 24, 2017 (sic). (Exhibit 8)

98. As of the date of the filing of this Complaint, Plaintiff's counsel has not received the entire video.

99. Consequently, all of the elements of spoliation exist here:

    a. Pending or probable litigation involving the Plaintiff;

    b. Knowledge on the part of a defendant that litigation exists or is probable;

    c. Willful destruction of evidence by defendant designed to disrupt the Plaintiff's case;

    d. Disruption of Plaintiff's case; and

    e. Damages proximately caused by the Defendant's acts.

## VI. JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues triable by jury.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that this Court:

A.     Award Plaintiff compensatory damages in an amount to be shown at trial;

B.     Award Plaintiff punitive damages (except against the County) in an amount to be shown at trial;

C.     Award Plaintiff reasonable attorney's fees, costs and disbursements;

D.     Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

/s/ Sara Gedeon
Malik Law
David B. Malik (0023763)
Sara Gedeon (0085759)
8437 Mayfield Road Suite 101
Chesterland, Ohio 44026
(440) 729-8260
(440) 490-1177
dbm50@sbcglobal.net
sgedeon1021@gmail.com